■ In the Matter of the Estate of BETH PRESS, Also Known as BETH SIEGEL, Deceased. ROBERT J. BURTON, Appellant; TIMOTHY L. THOMPSON, as Executor, Respondent. [816 NYS2d 441]—

Order, Surrogate's Court, New York County (Eve M. Preminger, S.), entered on or about November 23, 2004, which denied claimant's motion to disaffirm the report of the Special Referee dismissing his claims for legal fees against the estate, and granted the estate's cross motion to confirm the report, unanimously reversed, on the law, without costs, the motion granted to the extent of remanding the matter for a hearing, the cross motion denied and the Special Referee's report disaffirmed.

In 1998, claimant asserted two objections to the executor's accounting for legal work he had performed years earlier in connection with the decedent's divorce. Specifically, claimant alleged that the decedent, who died in January 1996, owed him $31,337.60 in legal fees which, pursuant to a judgment rendered in June 1985, her husband had been ordered to pay claimant on her behalf. Claimant also asserted a quantum meruit claim in excess of $64,000 for work he allegedly performed from March

11, 1982, the date he and the decedent executed a retainer agreement, until he was discharged in late 1990. The retainer provided that claimant represents the decedent "in all proceedings arising out of her marriage . . . , including proceedings for temporary alimony, permanent alimony, separation, divorce and/or enforcement of the post-nuptial agreement."

In 1991, claimant filed for bankruptcy. He alleges that on December 19, 1996, he served a complaint against the estate in the bankruptcy proceeding asserting the quantum meruit cause of action. Claimant argued before the Referee in this accounting proceeding that his objection based on the quantum meruit cause of action was timely because he served the complaint in the bankruptcy proceeding within six years of his discharge. However, the letter upon which claimant relied to establish his discharge date of December 19, 1990 is not part of the record, and he and the decedent executed an earlier substitution of counsel form dated November 20, 1990. There is no indication in the record whether the estate asserted a statute of limitations defense in the bankruptcy proceeding. Nor does it appear that claimant ever commenced proceedings against the decedent or her estate in the bankruptcy court or elsewhere for the amount set forth in the 1985 judgment, which is the basis of claimant's other objection.

After the estate replied to claimant's objections, asserted numerous defenses,* and requested that the objections be dismissed, the Surrogate referred the matter to a Referee to hear and report. However, on the day the hearing was to commence, the Referee dismissed the objections without taking any testimony or considering any evidence. The Referee issued a report which, upon the parties' respective motions, the Surrogate confirmed.

We reverse. The Referee committed a myriad of errors in summarily dismissing claimant's objections to the estate accounting. The first such error was reliance on a prior 1997 order to bar the objections on res judicata and collateral estoppel grounds. The estate was not a party to the prior action, and therefore, res judicata does not bar claimant's objections (*see Matter of Hodes v Axelrod*, 70 NY2d 364, 372 [1987]). Nor does collateral estoppel apply since, based on the record before us, it does not appear that the claims raised in the prior action are the same as those raised here (*see Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456-457 [1985]). The estate argues that claimant

---

* As to any statute of limitations issues regarding the objections that were raised before the Surrogate or Referee, none are raised on appeal, and we therefore do not address them.

did not proffer the record of the earlier action in order to demonstrate dissimilar issues or facts. However, "the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 501 [1984]; *see also Matter of Juan C. v Cortines*, 89 NY2d 659, 667 [1997]), a burden the estate failed to carry.

With respect to claimant's assertion that the estate is liable for the decedent's husband's obligation under the June 1985 judgment to pay her legal fees, the Referee found that claimant had failed to demonstrate any legal theory to allow that relief. However, claimant did offer legal authority to support his position that the judgment did not preclude him from seeking to recover payment of the fees in a separate action based on his retainer agreement with the deceased (*see Joel R. Brandes, P.C. v Ferraro*, 257 AD2d 610 [1999]; Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C237:1, at 6-7). Thus, assuming the objection is not otherwise barred, we reject the Referee's and executor's narrow interpretation of existing case law to preclude this objection.

To the extent claimant sought to introduce oral testimony that the decedent's successor counsel promised to pay claimant the legal fees which a court ordered her husband to pay claimant on her behalf, that testimony is barred by the statute of frauds, which requires any promise to pay the debt of a third party to be in writing (*see* General Obligations Law § 5-701 [a] [2]).

The Referee erroneously barred claimant from introducing any evidence to establish the validity of his quantum meruit claim. While both the Referee and the executor maintain that by statute claimant was required to submit any written claim or statement of services to the decedent after she discharged him, neither the Referee nor the executor cite any particular statute or rule which sets forth this so-called legal requirement. To the extent either may be relying on the Rules of the Chief Administrator regarding fee arbitration in domestic relations matters (22 NYCRR part 136), these rules only apply where representation has commenced on or after November 30, 1993. Here, the claimed representation commenced more than 10 years *prior to* the effective date of these rules.

The Referee also dismissed this objection based on an erroneous interpretation and premature application of CPLR 4519 (the Dead Man's Statute). Specifically, the Referee precluded claimant from introducing any evidence which contained the decedent's signature. However, introduction of documentary ev-

idence signed by the decedent does not run afoul of the statute "as long as the document is authenticated by a source other than an interested witness's testimony concerning a transaction or communication with the deceased" (*Acevedo v Audubon Mgt.*, 280 AD2d 91, 95 [2001]). Similarly, while claimant may have been restricted from presenting his own testimony regarding the decedent, he was not precluded from presenting "any competent evidence" to support this objection (*Matter of Beaumont*, 288 AD2d 69 [2001]). The record, such as it is, and given that a hearing had not even commenced and no testimony taken, does not support a finding at this juncture that claimant's witness was an "interested" witness whose testimony was precluded (*see Matter of Henken*, 139 Misc 2d 12, 17 n 2 [1988], *affd* 150 AD2d 447 [1989], *lv denied* 74 NY2d 612 [1989]) or whose testimony would have contained communications protected by the attorney-client privilege. Concur—Buckley, P.J., Marlow, Sweeny, Catterson and McGuire, JJ.