OPINION OF THE COURT
Lee L. Holzman, J.
*681 The petitioner seeks to be relieved as the respondent’s counsel in this accounting proceeding and to be paid the sum of $10,112.88 for services rendered. The respondent has retained another attorney and consents to the petitioner’s application to be relieved as her counsel. However, she objects to the fee requested. The parties have stipulated that this application be decided on the papers.
The respondent, one of the decedent’s three daughters, is bequeathed one third of the proceeds from the sale of the decedent’s real property. She is also both a coadministrator c.t.a. of the estate and a cotrustee of a testamentary trust. The respondent retained the petitioner to represent her on February 10, 2003. Although the petitioner asserts that a retainer agreement was mailed to the respondent on February 11, 2003, the petitioner concedes that the agreement was never signed by the respondent and it has not submitted a copy of this agreement. The petitioner billed the respondent on numerous occasions from March 6, 2003 to July 1, 2004. The respondent never made any payments for the legal services rendered. In a meeting held on May 5, 2003, the respondent expressed displeasure with the amount of the invoices that she had already received. The petitioner’s attempts to have the respondent sign a retainer agreement after May 5, 2003 continued to be unsuccessful. The bill dated May 13, 2003 states that the respondent owed $6,709.98. All of the bills submitted thereafter appear to be for the time spent by the petitioner in prosecuting the instant application.
The respondent avers that she was concerned about the amount of the first bill that she received and upon hearing the amount requested for March, she advised the petitioner on March 31, 2003 that no further services should be rendered until petitioner’s representation of her could be clarified. The petitioner denies that they ever had a conversation to that effect. In any event, the respondent asserts that the first time that she was presented with a retainer agreement was at the May 5, 2003 meeting. The respondent contends that she would have walked out of the petitioner’s office at the first meeting if she had been advised of all of the terms of the retainer agreement at that time. The respondent states that she is willing to pay a reasonable fee for the services rendered.
The initial issue is whether the petitioner should be precluded from receiving any fee as a result of its failure to comply with 22 NYCRR 1215.1, which was promulgated by joint order of the *682 Appellate Division departments and became effective on March 4, 2002. The rule provides in pertinent part as follows:
“(a) . . . [A]n attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee from a client shall provide to the client a written letter of engagement before commencing the representation, or within a reasonable time thereafter . . .
“(b) The letter of engagement shall address the following matters:
“(1) explanation of the scope of the legal services to be provided;
“(2) explanation of attorney’s fees to be charged, expenses and billing practices; and “(3) where applicable, shall provide that the client may have a right to arbitrate fee disputes under Part 137 of [the Rules of the Chief Administrator].
“(c) Instead of providing the client with a written letter of engagement, an attorney may comply with the provisions of subdivision (a) of this section by entering into a signed written retainer agreement with the client, before or within a reasonable time after commencing the representation, provided that the agreement addresses the matters set forth in subdivision (b) of this section.”
In Feder, Goldstein, Tanenbaum & D’Errico v Ronan (195 Misc 2d 704 [2003]), the defendant, an attorney, refused to pay the plaintiff, an attorney, for one appearance requesting an adjournment. The defendant alleged that his understanding was that the services were performed as a courtesy. In denying any compensation to the plaintiff, the court stated (at 707) that “[i]nasmuch as the plaintiff in this action acknowledged its failure to comply with the provisions of 22 NYCRR 1215.1 by failing to provide the defendants with a written letter of engagement or written retainer agreement, this court finds that plaintiff is precluded from recovering legal fees.” The court reasoned that 22 NYCRR 1215.1 is similar to 22 NYCRR 1400.3, relating to domestic relations matters, and inasmuch as attorneys have been precluded from recovering any legal fees for a failure to comply with section 1400.3, the same result should be reached for a failure to comply with part 1215.
Assuming arguendo that section 1215.1 was intended to apply to agreements between two attorneys and that the Feder facts *683 warranted an expectation that the legal fee would exceed $3,000 (22 NYCRR 1215.2 [a] provides that section 1215.1 is not applicable where the legal fee is expected to be less than $3,000), the Feder result appears appropriate. Any ambiguity in a retainer agreement is construed against the attorney because attorneys bear the burden of insuring that the terms of retainer agreements are fully comprehended by clients (Matter of Schanzer, 7 AD2d 275 [1959], affd 8 NY2d 972 [I960]). Similarly, where attorneys fail to meet their responsibility of obtaining or furnishing the writing required by section 1215.1 and there is a plausible misunderstanding as to whether counsel was to receive any compensation for the services, the issue should be decided against counsel. However, this court shares the concern that the Feder case might be used as a “forbidding precedent” to “create an unfair windfall for clients” should it be followed where clients know that the services are not pro bono and the failure to comply with the rule is not willful (Davis, Engagement Letters: Can’t Live Without Them, Can’t Change Them, NYLJ, Jan. 5, 2004, at 3, col 1).
Although section 1215.1 is similar to section 1400.3, there are also significant differences. Courts have precluded counsel from receiving any fee based upon a failure to comply with section 1400.3 because the rule was “promulgated to address abuses in the practice of matrimonial law and to protect the public” (Mulcahy v Mulcahy, 285 AD2d 587, 588 [2001], lv denied 97 NY2d 605 [2001], quoting Julien v Machson, 245 AD2d 122, 122 [1997]). Unlike section 1400.3, section 1215.1 was not promulgated to address abuses in the practice of law. Upon the promulgation of section 1215.1, Chief Administrative Judge Jonathan Lippman is quoted as saying that “this is not about attorney discipline in any way, shape or form, and we certainly do not expect in any significant degree there to be a large number of disciplinary matters coming out of this rule” (Caher, Rule Requires Clients Receive Written Letters of Engagement, NYLJ, Jan. 22, 2002, at 1, col 1). Instead, the rule is designed to prevent a misunderstanding about fees which is the most frequent source of disputes between attorneys and clients. Inasmuch as section 1400.3 was promulgated to address professional abuses, it requires that the signed retainer agreement be filed with the court. Moreover, the rule is applicable in all matrimonial cases. On the other hand, section 1215.1 does not provide for the filing of the letter of engagement or retainer agreement. Additionally, section 1215.2 provides that there is no *684 need, to comply with section 1215.1, inter alia, where the expected compensation is to be less than $3,000 or where the attorney’s services are of the same general kind as previously rendered to and paid for by the client.
In summary, section 1215.1 was promulgated to avoid misunderstandings as to legal fees rather than to alleviate professional abuses. Of course, no rule promulgated by the Appellate Division should intentionally be ignored by an attorney. Such unprofessional conduct invites both disciplinary and pecuniary penalties. However, where the failure to comply with section 1215.1 is not willful, the penalty should be commensurate with the offense. It appears unduly harsh to unjustly enrich the respondent at the expense of the petitioner, where, as here, the petitioner’s failure to comply with the rule appears to be unintentional and the respondent concedes that she knew that counsel was to be compensated for services rendered. The more measured penalty for the petitioner’s failure to comply with section 1215.1 is to resolve any misunderstanding arising from the lack of a letter of engagement or signed retainer agreement in favor of the respondent.
Based upon a consideration of each of the factors set forth in Matter of Freeman (34 NY2d 1, 9 [1974]) for the fixation of a legal fee on a quantum meruit basis and also taking into consideration that this fee dispute arose, at least in part, as a result of the petitioner’s failure to comply with section 1215.1, the compensation of the petitioner is fixed in the sum of $3,000. In the absence of a signed retainer agreement, there was no reason for the respondent to know that she would be charged $300 per hour in a matter where the primary issue related to furniture which appears to have more of a sentimental than a cash value. Clearly, counsel’s request for compensation of $300 per hour for traveling from the firm’s office in Carmel to this court in the Bronx ($600 on one occasion and $450 on another occasion) cannot be granted. Furthermore, a significant amount of counsel’s time appears to have been spent talking on the telephone.
The one tangible result achieved by counsel was a stipulation that was entered into on the record in open court with regard to the furniture. Although the terms of the stipulation did not result in ending that dispute, this does not appear to be the petitioner’s fault. Nevertheless, there are two reasons why the petitioner cannot be compensated for any services rendered after the attempts to effectuate the terms of the stipulation. The *685 first is because by that time the petitioner realized that the firm did not have a retainer agreement and that the respondent was questioning the bills that she had already received. Under these circumstances, the court must resolve in the respondent’s favor any misunderstandings as to whether additional services were to be performed until an agreement was reached on the terms of a retainer. The second reason is that counsel cannot be compensated for fees incurred in this proceeding to collect counsel’s own fee (Parkside Mem. Chapels v Garlick Funeral Homes, 61 AD2d 1028 [1978], lv denied 44 NY2d 647 [1978]). No interest shall be added to the compensation awarded because the failure to timely pay for the services resulted in significant part from the petitioner’s failure to comply with section 1215.1 and the petitioner’s attempt to recover for services for which it is not entitled to be compensated.
Accordingly, the application is granted to the extent that the petitioner is relieved from representing the respondent in this accounting proceeding and the petitioner’s compensation for services rendered is fixed in the sum of $3,000.